IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHRISTOPHER COUNCIL | § | |
|    TDCJ-CID #1077833 | § | |
| | § | |
| VS. | § | C.A. NO. C-03-566 |
| | § | |
| OFFICER SNYDER | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Christopher Council alleges that defendant Matthew Snyder failed to protect him from a sexual assault when he was in prison. Pending is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). (D.E. 48). For the reasons stated herein, it is respectfully recommended that defendant's motion for summary judgment be granted, and that plaintiff's Eighth Amendment claim be denied on the merits and dismissed with prejudice.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff was formerly an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"). He filed this lawsuit on November 12, 2003, claiming that defendant Snyder, a correctional officer at the McConnell Unit in Beeville, Texas, was deliberately indifferent to his health and safety in violation of his Eighth

Amendment right to be free from cruel and unusual punishment. (D.E. 1). In particular, plaintiff alleged that on August 4, 2003, defendant opened the door to his cell, thus allowing another inmate, Arturo Galvan, to enter his cell and sexually assault him. Id. Plaintiff is seeking "250,000,000 punitive damages." (D.E. 1 at 3).

Service of process was executed on March 30, 2004, (D.E. 15); however, defendant did not file an answer, and on October 25, 2004, a hearing was held with the Attorney General's Office as *amicus curie*. It was reported that Officer Snyder was on active military duty. The Court ordered status reports every three months. (See D.E. 24, 25, 26, 27, 29, 30, 35, 36, 38).

On January 30, 2007, the Attorney General reported that Officer Snyder had returned from active duty and was ready to proceed with his defense. (D.E.38). On February 23, 2007, defendant filed his answer, and raised the defense of qualified immunity. (D.E. 40).

On June 4, 2007, defendant filed the instant motion for summary judgment. (D.E. 48). Plaintiff has not filed a response in opposition.

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

The alleged sexual assault of plaintiff on August 4, 2003 was investigated by the TDCJ's Office of the Inspector General ("OIG"). In support of his motion for summary

judgment, defendant offers a copy of the OIG's investigative file and reports contained therein.[1]  The following facts are not in dispute:

Prior to August 4, 2003, plaintiff and offender Galvan were involved in a physical and sexual relationship on and off since March 2002.  (OIG at 6.)  Plaintiff referred to offender Galvan as his "husband."  Id.  They had consensual sex on August 2, 2003.  Id.

On August 3, 2003, the C-pod rover told Sergeant Briseno that offender Galvan needed to speak with him.  (OIG at 29).  Sergeant Briseno met with Galvan in his cell, where Galvan told him that he was having problems with plaintiff.  Id.  Sergeant Briseno asked Galvan if he needed to file a life endangerment claim, but Galvan said no.  Id.  Sergeant Briseno then went to speak to plaintiff, and asked him if there was a problem, but he said no.  Id.  Sergeant Briseno then returned to Galvan and asked him if he needed to be moved to 11 Building for his own safety, but he responded that he was not in any danger.  Id.  Sergeant Briseno instructed Galvan that, if any time during the day he needed to claim life in danger, then he was to inform him as soon as possible.  Id.

On August 4, 2003 at around 3:30 a.m., defendant and other officers were sending offenders to the chow hall to eat breakfast.  (OIG at 30, 61).  Defendant was on duty in the control picket, and Officer Trotter was on the floor signaling for defendant to open different cell doors to allow the inmates to go to chow hall.  Id.  That morning, plaintiff remained in

---

[1] The OIG file with business record affidavit is attached to defendant's motion for summary judgment at D.E.48. Reference to the OIG file will be to "OIG" followed by the appropriate bates-stamp number.

bed when his cell mate left for breakfast. (OIG at 19, 21). Galvan then entered plaintiff's cell, and they quarreled about their relationship. (OIG at 22, 28).

Officer Trotter was in the dayroom as offenders were returning from breakfast. (OIG at 30). She heard someone call out several times for help. Id. She rushed to 20 cell and motion for defendant to open 20 cell from the picket. Id. Defendant saw her gesturing and opened three cell doors, one of which was cell 20. (OIG at 61). Officer Trotter reported that Galvan walked out of plaintiff's cell, followed by plaintiff. (OIG at 30). Officer Trotter observed blood on offender Galvan's face, a knot forming on his forehead, and blood on his shirt and pants. Id. She observed that plaintiff was dressed in his boxers and that he had bruises on his face. Id. Officer Trotter escorted Galvan to 3 desk and placed him in the cage. Id. She initially left plaintiff in his cell, then returned and escorted him to 3 desk and the cage. Id. Neither plaintiff nor Galvan reported that he had been sexually assaulted. Id.

Sergeant Soto, the officer at 3 desk, reported that plaintiff told him Galvan had sexually assaulted him by forcing him to perform oral sex. (OIG at 31). Both plaintiff and Galvan were then escorted to medical. Id.

At the infirmary, LVN Mittag noted the following injuries to plaintiff: "1/4 cm superficial scratch to nose; swelling to nose and below left eye; 2 cm knot to left side of forehead; sclera to left eye: 1/4 cm red spot upper pupil; loose tooth front lower jaw." (OIG at 32, 36). She noted that no rape kit was necessary because of the "circumstances of fellatio." (OIG at 35). Plaintiff was prescribed Motrin and released. Id.

4

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  See id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. **DISCUSSION**

**A.     Claims against defendant in his official capacities.**

Plaintiff is seeking monetary damages against defendant.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The

Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

Here, plaintiff is is not seeking any prospective, injunctive relief, but monetary damages only. To the extent plaintiff is suing defendant in his official capacity for those money damages, that claim is barred by the Eleventh Amendment. Thus, it is respectfully recommended that defendant be granted summary judgment in his favor as to plaintiff's monetary claims against him in his official capacity.

**B.     Qualified Immunity**

Defendant moves for summary judgment on the grounds of qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624. Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001).

### 1. Failure to protect.

Plaintiff contends that Officer Snyder was deliberately indifferent to his health and safety on August 4, 2003, because he was controlling the cell doors from the picket, and that he unlocked his cell door, making it possible for Galvan to enter his cell and assault him.

*Step 1 – Constitutional violation.*

To establish a failure to protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that the defendant prison official was deliberately indifferent to his need for protection.

Farmer v. Brennan, 511 U.S. 825, 834 (1994); Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995).  To act with deliberate indifference, a defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  Deliberate indifference may be inferred from the fact that the risk of harm is obvious.  Hope v. Pelzer, 536 U.S. 760, 738-39 (2002). Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient.  Farmer, 511 U.S. at 837; see also Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

Plaintiff fails to state a claim of deliberate indifference against Officer Snyder because he fails to demonstrate that he knew, or should have known, that plaintiff was at risk of harm from offender Galvan, an essential element of any failure to protect claim.  Farmer, 511 U.S. at 837.  The uncontested facts establish that, prior to the assault, plaintiff and Galvan had a homosexual relationship.  (OIG at 1-11).  However, nothing in the OIG investigation indicates that defendant was aware of the relationship.  Plaintiff and Galvan broke off their relationship on August 3, 2003.  (OIG at 4).  Due to Galvan reporting that plaintiff was harassing him, Sergeant Briseno spoke to each offender on August 3, 2003, to see if either inmate wanted to file a life in danger claim.  (OIG at 4, 29).  Neither did.  Id. at 29.  Thus, there was no formal complaint on file notifying staff of a problem between plaintiff and Galvan.  Further, there is no evidence that Sergeant Briseno ever talked to defendant about a potential problem between plaintiff and Galvan.

A prison official cannot be found liable under the Eight Amendment unless he knows of and disregards an excessive risk to an inmate's health or safety. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 842. Here, there is no evidence that defendant was aware of facts from which the inference could be drawn that plaintiff was at risk of substantial harm from Galvan, nor are there any facts to suggest that defendant made an inference and disregarded it. In fact, defendant's only documented involvement in this case is that he opened plaintiff's cell door from the picket control during a time when offenders were being moved to and from the dining hall for breakfast. (OIG at 30, 61). Plaintiff fails to establish that defendant had subjective knowledge of any threat to his health and safety.

Under exceptional circumstances, a prison official's knowledge of substantial risk of harm may be inferred by the obviousness of the substantial risk. Farmer, 511 U.S. at 840-44. For example, in Hope v. Pelzer, 536 U.S. 730, 738 (2002), the Supreme Court found that the risk of harm was obvious where the prison employed a hitching post. However, in Farmer, the fact that the plaintiff was a transsexual who had undergone breasts implants and had "feminine characteristics," did not equate with subjective recklessness as to the defendants' placement of the plaintiff in general population. Farmer, 511 U.S. at 829, 840-43. The case was remanded for further findings. Id. at 829.

In this case, there was no obvious substantial risk. It was offender Galvan who complained to Sergeant Briseno one day earlier that he was having problems with plaintiff.

(OIG at 29). Plaintiff, however, told Sergeant Briseno there was no problem. Id. Both offenders were given disciplinary cases for fighting without a weapon. (OIG at 1-2). There are simply no facts to suggest that defendant Snyder should have known facts from which he should have inferred a risk. Thus, plaintiff fails to state a claim of deliberate indifference to his health and safety against Snyder.

### *Step 2 – Objective reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right. Therefore, defendant is entitled to the defense of qualified immunity. Saucier, 533 U.S. at 201.

## VI. RECOMMENDATION

Plaintiff's claim for money damages against defendant in his official capacity is barred by the Eleventh Amendment, and it is respectfully recommended that defendant's motion for summary judgment to dismiss plaintiff's claim against him in his official capacity

(D.E. 48) be granted, and that claim dismissed with prejudiced. It is further recommended that the Court find defendant is entitled to qualified immunity, and grant summary judgment in his favor on plaintiff's Eighth Amendment failure to protect claims against him in his individual capacity, and dismiss those claims with prejudice.

Respectfully submitted this 19th day of July, 2007.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).